UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUANITA GARZA,<br><br>     Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>     Defendant. | No. 1:15-CV-3188-JTR<br><br>ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 14, 15. Attorney Cory J. Brandt represents Juanita Garza (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits (DIB) on April 19, 2012, alleging disability since March 5, 2010, due to depression, carpal tunnel,

knee injury, diabetes, back injury, a vision problem, hearing loss and gall bladder surgery. Tr. 147-154, 176. Plaintiff's application was denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Wayne N. Araki held a hearing on March 26, 2014, Tr. 25-57, and issued an unfavorable decision on April 24, 2014, Tr. 12-20. The Appeals Council denied review on September 10, 2015. Tr. 1-6. The ALJ's April 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 22, 2015. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on March 31, 1955, and was 54 years old on the alleged disability onset date, March 5, 2010. Tr. 147. Plaintiff completed high school and also completed college coursework in secretarial training. Tr. 31-32, 177. Plaintiff has over 30 years of work experience as a legal assistant for various attorneys' offices. Tr. 32-36, 177. She stated she was let go from her last legal secretary position because her production was low. Tr. 35. Plaintiff indicated on her disability report form that she stopped working on March 5, 2010, because she was laid off, and by June 1, 2011, her conditions prevented her from working. Tr. 176.

At the March 26, 2014, administrative hearing, Plaintiff testified she took medication, Neurontin and Gabapentin, for diabetic neuropathy. Tr. 37, 40. She stated these pain medications had been helpful. Tr. 40. She indicated she had also been on two diabetic medications, including Metformin, for a year prior to the administrative hearing. Tr. 39. She stated she had problems with her hands despite prior carpel tunnel surgery, knee and back pain, and some problems with depression and anxiety. Tr. 41-42, 47-48, 52-53.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 2

Plaintiff testified she had been without health insurance for four years from the time she stopped working and had only recently established regular care with a physician. Tr. 49. She had previously attended the Mission for diabetic and mental health care. Tr. 49-51.

Plaintiff testified she is able to dress herself, but has difficulty tying her shoes, fastening buttons and using zippers. Tr. 42, 44-45. She can do the laundry, but she does not sweep or vacuum, and her husband does all of the yard work. Tr. 42-44. Plaintiff is able to drive but stated she will not do so if she has taken her medications. Tr. 48.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If evidence supports the administrative findings, or if conflicting evidence supports a finding of either

disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity since March 5, 2010, the alleged onset date. Tr. 14. At step two, the ALJ determined Plaintiff had the severe impairments of osteoarthritis of the bilateral knees, diabetes mellitus, back disorder, and bilateral carpal tunnel syndrome. Tr. 14. The ALJ specifically determined Plaintiff's mental health symptoms did not cause more than minimal limitations in her ability to perform basic mental work activities; therefore, he did not find Plaintiff suffered from a severe mental health impairment. Tr. 14-15.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments. Tr. 16. The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform light exertion level work, but could stand or walk in only two-hour intervals for eight hours per day; could only occasionally kneel, crawl and climb stairs or ladders; and could not climb ropes or scaffolds. Tr. 17. The RFC determination does not mention any restrictions related to Plaintiff's severe carpal tunnel impairment, such as the need to avoid repetitive lifting or keyboarding as opined by examining physicians Drs. Seltzer and Shaul and the state agency reviewing physician. *See* Tr. 80, 283.

At step four, the ALJ found Plaintiff was able to perform her past relevant work as a legal assistant as generally performed. Tr. 19-20. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 5, 2010, the alleged onset date, through the date of the ALJ's decision, April 24, 2014. Tr. 20.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly rejecting the opinion of her examining provider William Drenguis, M.D.; (2) improperly discrediting Plaintiff's subjective complaints; and (3) failing to conduct a proper step four assessment.

**DISCUSSION**

**A.    Plaintiff's Credibility**

Plaintiff contends the ALJ erred by failing to provide specific, clear and convincing reasons for rejecting her subjective complaints. ECF No. 14 at 9-11. The Court agrees.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231

(9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. Tr. 17.

### 1. Objective Medical Evidence

The ALJ determined the objective medical evidence of record did not support Plaintiff's disability assertions. Tr. 17. A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991).

The ALJ first indicated that medical evidence from the relevant time period did not support Plaintiff's allegations of worsening hand problems. Tr. 17-18. The ALJ cited the May 14, 2012, report of Theodore H. Palmatier, M.D., which indicated Plaintiff had full range of motion of the bilateral hands, wrist and elbows; her sensation of the upper extremities was intact; she had 27 kg grip strength bilaterally; and there was no objective worsening of Plaintiff's condition since October 10, 2005, Tr. 17, 242-243, and the June 30, 2012, report of William Drenguis, M.D., which indicated Plaintiff's elbow, wrist, and finger range of

motion bilaterally was unremarkable and that Plaintiff had normal strength and sensation in her upper extremities, Tr. 18, 249-250.

However, Dr. Palmatier also determined Plaintiff had right MCC joint discomfort and positive Finkelstein's bilaterally, demonstrating the presence of tendinitis. Tr. 242-243. With regard to employability, Dr. Palmatier indicated Plaintiff would have limits of function regarding the bilateral upper extremities. Tr. 242. He stated Plaintiff should limit repetitive motion work, especially involving the right upper extremity. *Id.*

June 2012 x-rays of Plaintiff's right hand revealed "[p]rominent degenerative changes of the thumb IP joint . . . [l]esser degenerative changes of the PIP joints." Tr. 245. Although a September 12, 2012, independent medical examination conducted by S. Daniel Seltzer, M.D., and Stephen R. Shaul, M.D., indicated x-rays of Plaintiff's hands and wrists were unremarkable with no sign of progressive arthritic change, Tr. 275, Drs. Seltzer and Shaul opined on October 8, 2012, that Plaintiff should limit repetitive lifting and keyboarding, Tr. 283.

On September 18, 2012, James Dodge, M.D., completed a bone imaging study which suggested "complex regional pain syndrome of the right upper extremity." Tr. 284. On the same date, Voderbet C. Kamath, M.D., conducted a nerve study. Tr. 286-287. The nerve study results revealed mild bilateral carpal tunnel syndrome and mild left cubital tunnel syndrome. Tr. 287.

Finally, on December 27, 2012, state agency reviewing physician Norman Staley, M.D., indicated Plaintiff was limited in pushing and pulling in her upper extremities and limited in reaching with her left and right arm in front and/or laterally and overhead. Tr. 79-80. He opined Plaintiff's reaching should be limited to frequent or less and that she should avoid repetitive movements such as lifting and keyboarding. Tr. 80.

The Court finds the objective medical evidence of record is not inconsistent with Plaintiff's allegations of arm weakness and pain. Tr. 42.

The ALJ next noted that the objective medical evidence of record did not support the level of Plaintiff's allegations with respect to her knee and back problems. Tr. 18. However, Dr. Drenguis' report indicated Plaintiff shifted from side to side during the interview in an attempt to get comfortable; she was unable to walk on her toes or heels because of left leg pain; Plaintiff was unable to hop because of back pain; a full squat caused knee popping and pain; she had limited range of motion in her lumbar spine; and she had pain with palpation along the medial joint of her left knee and crepitus in her left knee. Tr. 248-249. Dr. Drenguis opined that Plaintiff had symptoms of osteoarthritis in her lumbar spine and left knee which would limit her to a maximum of four hours of standing and walking during an eight-hour workday. Tr. 250. The ALJ gave weight to the opinion of Dr. Drenguis and specifically found Plaintiff would "be able to stand and/or walk for four hours." Tr. 19.

Contrary to the ALJ's determination, the Court finds Plaintiff's knee and back complaints are substantiated by objective record evidence.

### 2.     Responsibility for Healthcare

The ALJ additionally indicated the record suggested Plaintiff did not take full responsibility for her healthcare, "which suggests that her complaints are not as severe as alleged." Tr. 18. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment may cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ noted Plaintiff was instructed in January 2013 to follow up with her treatment provider regarding starting diabetes medication as soon as possible, but Plaintiff had failed to do so. Tr. 18. However, at the March 26, 2014, administrative hearing, Plaintiff testified she had been on two diabetic medications, including Metformin, for a year prior to the hearing. Tr. 39. In any event, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue

treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7; *see Dean v. Astrue*, 2009 WL 2241333 (E.D. Wash. 2009) (noting "the SSR regulations direct the ALJ to question a claimant at the administrative hearing to determine whether there are good reasons for not pursuing medical treatment in a consistent manner"). As discussed at the administrative hearing, Plaintiff had been without health insurance for four years after she lost her job. Tr. 49. A lack of medical insurance provides a reasonable basis for a failure to pursue treatment for medical issues.

Although the ALJ indicated Plaintiff failed to attend an appointment regarding an application for health insurance under the Affordable Care Act, Tr. 18, the ALJ neglected to explore why Plaintiff missed the appointment. In any event, the ALJ provided no explanation for how the failure to attend a health insurance appointment equated to noncompliance with medical care or a failure to seek medical treatment, directly affected Plaintiff's ability to care for her health, or otherwise detracted from her overall credibility.

### 3. Awareness of A1c Reading

The ALJ lastly stated that Plaintiff's lack of awareness of her A1c reading, a critical component in determining control of diabetes, suggested Plaintiff was not entirely credible. Tr. 18.

The A1c test, a blood test that provides information about a person's average levels of blood glucose (blood sugar) over the past two to three months, is performed on people who have diabetes about once every three months. The A1c reading assesses how well a diabetes management plan is working and whether diabetes medicines need to be adjusted.

The ALJ provided no reasoning for how a lack of awareness of this particular medical determination detracted from Plaintiff's credibility. The Court

1  finds the fact that Plaintiff was not aware of her A1c reading at the time of the
2  administrative hearing is not a clear and convincing reason to reject her testimony.
3      The ALJ is responsible for reviewing the evidence and resolving conflicts or
4  ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.
5  1989). It is the role of the trier of fact, not this Court, to resolve conflicts in
6  evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in
7  determining whether the ALJ's decision is supported by substantial evidence and
8  may not substitute its own judgment for that of the ALJ even if it might justifiably
9  have reached a different result upon *de novo* review. 42 U.S.C. § 405(g).
10 Nevertheless, based on the foregoing, the Court finds that the rationale provided by
11 the ALJ for discrediting Plaintiff is not clear and convincing. The Court thus
12 concludes a remand for a proper credibility determination is necessary in this case.

**B.    Medical Opinion Evidence**

   Plaintiff also contends the ALJ erred by improperly rejecting the medical opinion of her examining provider Dr. Drenguis. ECF No. 14 at 7-9.

   On June 30, 2012, Dr. Drenguis examined Plaintiff. Tr. 247-251. Dr. Drenguis diagnosed osteoarthritis of the knees and lumbar pain consistent with osteoarthritis of the lumbar spine. Tr. 250. As stated above, Dr. Drenguis opined that Plaintiff was limited to a maximum of four hours of standing and walking during an eight-hour workday. Tr. 249-250.

   The ALJ gave "some weight" to the opinion of Dr. Drenguis and specifically stated Plaintiff would "be able to stand and/or walk for four hours." Tr. 19. While this finding by the ALJ does not appear to be in conflict with Dr. Drenguis' report, the ALJ's RFC determination does not account for a restriction of a maximum of only four hours of standing and/or walking during an eight-hour workday. Tr. 17.

   As concluded above, in light of the ALJ's erroneous credibility determination, this matter will be remanded for additional proceedings. On remand, the ALJ shall reconsider Plaintiff's statements and testimony. The ALJ

shall additionally reassess Plaintiff's RFC, taking into consideration the medical opinions of Dr. Drenguis, Tr. 247-251, and all other evidence of record relevant to Plaintiff's claim for disability benefits. In addition, the ALJ shall direct Plaintiff to undergo a new consultative physical examination and, if warranted, elicit the testimony of a medical expert to assist the ALJ in formulating a new RFC determination.

### C. Step Four Determination

Plaintiff has also specifically challenged the ALJ's step four determination in this case. ECF No. 14 at 12-14.

A claimant will be found not disabled when it is determined that she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. S.S.R. 82-61. "If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Therefore, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite her identified limitations only after a claimant has established a prima facie case of disability by demonstrating she cannot return to her former employment. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986).

As determined above, the ALJ's credibility determination is not supported by substantial evidence in this case; therefore, this matter must be remanded for additional proceedings. *Supra*. On remand, the ALJ shall also reassess steps four and five of the sequential evaluation process, with the assistance of a vocational expert, to address whether Plaintiff is able to return to her past relevant work or to make a vocational adjustment to other work in the national economy.

///

**CONCLUSION**

Plaintiff argues the ALJ's decision should be reversed and remanded for an immediate award of benefits. ECF No. 14 at 14. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand for additional proceedings is appropriate when additional proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

On remand, the ALJ shall reconsider Plaintiff's statements and testimony and reassess Plaintiff's RFC, taking into consideration the medical opinions of Dr. Drenguis, Tr. 247-251, and all other evidence of record relevant to Plaintiff's claim for disability benefits, including medical reports finding Plaintiff should avoid repetitive movements such as lifting and keyboarding. The ALJ shall additionally develop the record further by requiring Plaintiff to undergo a new consultative physical evaluation prior to a new administrative hearing and, if warranted, by eliciting medical expert testimony to assist the ALJ in formulating a new RFC determination. With the assistance of a vocational expert, and ensuring the vocational expert is provided a hypothetical that is consistent with the RFC ultimately determined, the ALJ shall reassess steps four and five of the sequential evaluation process to address whether Plaintiff is capable of performing her past relevant work or any other work existing in sufficient numbers in the national economy.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**.

///

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide copies to counsel. **Judgment shall be entered in favor of Plaintiff,** and the file shall be **CLOSED**.

DATED November 3, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE